| | |
|---|---|
| IN RE | ) |
| | ) |
| **EMERALD CASINO, INC.,** | )      Chapter 7 |
| | )      02 B 22977 |
|           **Plaintiff-Debtor** | )      Bankr. Adv. No. 08 A 00972 |
| | ) |
| _____ | ) |
| | ) |
| **FRANCES GECKER, not individually but** | ) |
| **solely as chapter 7 trustee for the** | ) |
| **bankruptcy estate of Emerald Casino, Inc.,** | ) |
| | ) |
|         **Plaintiff,** | ) |
|      **v.** | )      No. 11 C 4714 |
| | ) |
| **DONALD F. FLYNN, KEVIN F. FLYNN,** | )      Judge Rebecca R. Pallmeyer |
| **KEVIN LARSON, JOHN P. McMAHON,** | ) |
| **JOSEPH F. McQUAID, WALTER HANLEY,** | ) |
| **and PEER PEDERSEN,** | ) |
| | ) |
|        **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

Kevin Flynn was one of several investors in the Emerald Casino, a business formed to operate a land-based casino in Illinois. The casino plan ran into regulatory difficulty, however, and the Illinois Gaming Board stripped Emerald of its license to operate. Emerald filed bankruptcy and Frances Gecker, the bankruptcy trustee (hereinafter "the Trustee"), sued Flynn and others, alleging that their conduct led to the loss of the license. In September 2014, this court found Kevin Flynn and others liable, and after settlement efforts failed, the court entered judgment earlier this year.

Kevin Flynn died during the pendency of the action. The Trustee now seeks to execute on the substantial judgment she won against him. To that end, the Trustee has issued citations to discover assets in the hands of Kevin Flynn's widow, Susan Flynn—in Susan's personal capacity, in her capacity as executor of her late husband's estate, and in her capacity as trustee of a trust formed by her husband before his death. Susan Flynn and the estate itself have

moved to quash these citations. For the reasons explained here, the court denies the motions and lifts the stay it imposed on the citation proceedings. As further explained, however, the Trustee's victory on this motion may be a Pyrrhic one, as the court concludes that the Illinois probate court has exclusive jurisdiction to distribute any assets found to be part of Kevin Flynn's estate.

## **FACTS**

This case began as an adversary proceeding in 2008 arising from the bankruptcy of the Emerald Casino. The facts and procedural history are long and complicated, detailed in full in the court's September 30, 2014 opinion. *In re Emerald Casino, Inc.*, 530 B.R. 44 (N.D. Ill. 2014). Kevin Flynn, one of several defendants, died on August 12, 2013, and his estate was substituted as Defendant in the still-pending case against him. (Mem. in Supp. of the Estate of Kevin F. Flynn's Mot. to Dismiss Suppl. Proceedings for Lack of Jurisdiction [hereinafter "Estate Br."] [478], at 2.) After settlement efforts with certain other defendants concluded, the court entered judgment in the amount of $45,333,333.33 against Kevin's estate and in favor of Plaintiff Francis Gecker as Chapter 7 trustee for the bankruptcy estate of the casino. (J. Order, Jan. 12, 2016 [401].) The Trustee now seeks to enforce that judgment.

Kevin[1] was a wealthy businessman in his lifetime, but his estate is reportedly all but worthless. The Trustee believes that some of Kevin's assets may now be in the hands of other persons or institutions subject to citation proceedings. (Trustee's Combined Obj. to Estate of Kevin F. Flynn's & Susan Flynn's Mots. to Dismiss Suppl. Proceedings [hereinafter "Trustee Br."] [492], at 2–3.) Accordingly, she has issued citations to eighteen individuals and institutions to discover assets, including to Susan individually [473-10], in her capacity as executor of Kevin's estate [473-2], and in her capacity as the trustee of a trust [473-4].

---

[1] Throughout this order, Kevin Flynn and Susan Flynn are referred to by their first names to avoid confusion.

The trust in question, referred to by the parties as the Appointive Trust, was funded (at least in part)[2] at Kevin's death by the operation of his will and several other trust instruments. (*See* Mem. of Susan Flynn, Joining Mot. to Dismiss Suppl. Proceedings for Lack of Jurisdiction [hereinafter "Susan's Br."] [483-1], at 2–3.) The funding stream begins with the Kevin F. Flynn June, 1992 Non-Exempt Trust (the "1992 Trust"), which Kevin's father created in 1992, naming Kevin as the beneficiary. (*Id.* at 2.) The 1992 Trust contains what is known as a "spendthrift" provision, which generally shields trust assets from claims of a beneficiary's creditors.[3] (Trust Agrmnt. ¶ 8, Ex. C to Estate Br. [483-5].) It also contains an appointment provision that allowed Kevin, by his will, to direct the trust assets to the benefit of any person or entity other than his estate or his creditors. (*Id.* at ¶ 2(d).)

By his will, Kevin exercised that power of appointment in favor of another trust, the Kevin F. Flynn 1995 Trust (the "1995 Trust"). (Will of Kevin F. Flynn, Ex. D to Estate Br. [483-6], at 2.) Kevin was the trustee of the 1995 trust, which was presumably created in 1995 but is governed now by an amended trust instrument executed by Kevin in 2010. (Restatement of the Kevin F. Flynn 1995 Trust, Ex. E to Estate Br. [hereinafter "1995 Trust Restmnt."] [483-7].) The 1995 Trust, under the 2010 amended trust instrument, anticipates the transfer of 1992 Trust assets in the event of Kevin's death. (*Id.* at ¶ 5.) The 2010 trust instrument requires the trustee of the 1995 Trust to transfer any property received from the 1992 Trust to yet another trust—the Appointive Trust (*id.* at ¶ 5)—to be created in the event of Kevin's death under terms laid out in the 2010 trust instrument. (*Id.* at ¶ 12.) Susan contends that the Appointive Trust is also

---

[2]     The Trustee concedes nothing about the contents of the various trusts, including whether the Appointive Trust exclusively holds assets from the 1992 Trust or whether Kevin may have placed other assets into it during his lifetime. (Trustee Br. 5.)

[3]     A trust settlor can create a trust that prevents a beneficiary's creditors from reaching trust assets in many circumstances, provided the trust beneficiary also cannot alienate the trust assets. *See Cmty. Bank of Elmhurst v. Klein*, 2014 IL App (2d) 121074, ¶¶ 12–13, 6 N.E.2d 841, 843–44. A provision (such as the one in the 1992 Trust) that specifies that trust assets are not available to creditors is known as a "spendthrift" provision. 4 Andrew R. Gelman *et al.*, *Horner Probate Practice & Estates* § 78:11 (2016).

subject to a spendthrift provision (Susan's Br. 4 (citing 1995 Trust Restmnt. at ¶ 20)), but the provision does not specifically appear in the terms governing the Appointive Trust (1995 Trust Restmnt. at ¶ 12), and its applicability to the Appointive Trust may be in dispute. The court does not resolve at this stage whether the term applies to the Appointive Trust, or whether the Appointive Trust may regardless be a spendthrift trust by operation of Illinois law, *see* 735 ILCS 5/2-1403.

The Estate and Susan have jointly requested that all of the citations be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because the probate exception deprives the court of jurisdiction. (Estate Br. 1–2; Susan's Br. 1.) As more fully explained below, the court concludes that its jurisdiction to enforce its own judgments extends to the discovery of assets to add to the estate, but the probate exception will likely prevent it from awarding any discovered assets to any particular creditor, including the Trustee.

## DISCUSSION

I.    **The Probate Exception Does Not Bar Citations**

The court generally has broad power to execute its judgments. *Star Ins. Co. v. Risk Mktg. Grp.*, 561 F.3d 656, 662 (7th Cir. 2009). Unless a federal statute governs the particular circumstances, collection proceedings in federal court are governed by state law. FED R. CIV. P. 69(b). Under Illinois law, the court may "inquire as to whether third parties hold assets of the judgment debtor." *Dexia Credit Local v. Rogan*, 629 F.3d 612, 624 (7th Cir. 2010). Ordinarily, the court may also order a third party to turn over assets to the creditor if those assets do, in fact, belong to the judgment debtor. *Id.* (collecting Illinois cases).

Susan and the Estate argue that the probate exception to federal jurisdiction limits this court's power in this case. The probate exception arises from a limitation on the equity jurisdiction conferred on federal courts by the Judiciary Act of 1789. *Marshall v. Marshall*, 547 U.S. 293, 308 (2006). Specifically, the Judiciary Act authorized federal courts to exercise only the jurisdiction enjoyed by the contemporary English Court of Chancery, which did not extend to

probate matters. *Id.* In an older case endeavoring to clarify the exception, the Supreme Court explained that federal courts have no jurisdiction to probate a will, to administer an estate, or to "disturb or affect the possession of property in the custody of a state court." *Markham v. Allen*, 326 U.S. 490, 494 (1946). Federal courts could, however, hear cases by claimants "against a decedent's estate 'to establish their claims' so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." *Id.* (quoting *Waterman v. Canal-La. Bank & Tr. Co.*, 215 U.S. 33, 43 (1909)). After *Markham*, some circuits expansively read the exception to prohibit claims that might "interfere with" probate proceedings generally, regardless of whether those claims actually interfered with property in custody of the state court. *Marshall*, 547 U.S. at 311.

In *Marshall v. Marshall*, the Court reigned in expansive interpretations of the probate exception. Vickie Lynn Marshall (known to the world as Anna Nicole Smith) sued the son of her deceased husband in federal court, alleging that the son had tortiously interfered with a testamentary gift to her. *Id.* at 300–01. Vickie Marshall initiated the suit while her husband's estate was still pending in the state probate court. *Id.* The district court entered judgment in her favor, but the Ninth Circuit vacated the judgment, holding that the tortious interference claim raised "questions which would ordinarily be decided by a probate court," and therefore interfered with the probate proceeding in violation of the probate exception. *Id.* at 304.

The Supreme Court overturned that decision, concluding that the probate exception did not defeat federal jurisdiction over the tortious interference claim. *Id.* at 305. Clarifying the *Markham* holding, the Court explained that the probate exception does not proscribe generalized "interference with" state court proceedings; instead, the exception deprives a federal court of jurisdiction only where federal jurisdiction would "disturb or affect the possession of property in the custody of the state court." *Id.* at 311–12. Because Vickie Marshall's claim sought a judgment against the son, and did not specifically seek property in the custody of the state court, the exception did not apply. *Id.* at 312.

Cases decided since *Marshall* suggest that claims that would *add* assets to an estate, but do not *reallocate* those assets among claimants or creditors, do not disturb a state probate court's possession of property. In *Gustafson v. ZumBrunnen*, the representative of an estate brought a suit in federal court against several holders of a joint bank account containing $50,000 which the representative claimed belonged to the estate. 546 F.3d 398, 400 (7th Cir. 2008). The district court dismissed the case for lack of complete diversity between the parties, and the Seventh Circuit affirmed, but paused to note that the case was not barred by the probate exception. *Id.* at 400–01. Although the suit was "ultimately based on the will," the court observed, it would "just add assets to the decedent's estate; it would not reallocate the estate's assets among contending claimants or otherwise interfere with the probate court's control over and administration of the estate." *Id.* at 400. The First Circuit reached the same conclusion in *Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 24 (1st Cir. 2010). In *Jimenez*, the representative of an estate sued in federal court to recover a 20% share of profits on the sale of a building which the decedent had an option to purchase. *Id.* at 22. On appeal from dismissal for lack of diversity jurisdiction, the First Circuit held that the claim did not interfere with property in the possession of the state court, explaining that "[b]ecause neither the money nor the apartment are yet part of the decedent's estate, neither are yet in the custody of a Puerto Rico probate court." *Id.* at 24. The court observed that "[w]hile divvying up an estate falls squarely within the probate exception, merely increasing it does not." *Id.*

Even before *Marshall*, federal courts recognized that actions that merely prompt the administration of estate assets also do not run afoul of the probate exception. In *Dulce v. Dulce*, a plaintiff obtained a judgment in federal court against a defendant who died before the judgment was satisfied. 233 F.3d 143, 144 (2d Cir. 2000). The plaintiff asked the district court to order the estate's representative to file the decedent's will for probate. *Id.* at 144–45. The district court found it did not have jurisdiction to order the will probated because of the probate exception. *Id.* at 145. The Second Circuit reversed, holding that such an order would not

interfere with the state court administration of particular assets in violation of the probate exception. *Id.* at 147. To the contrary, "the purpose of the order would be to enable the appropriate state court to discharge its responsibilities notwithstanding the efforts of the person in possession of the decedent's will . . . ." *Id.*

None of these cases presents the precise situation before this court, where a judgment creditor has served citations to discover assets that could be used to satisfy a judgment against a deceased debtor. But the cases do appear to establish as a general principle that the court's jurisdiction extends to any matter that would add assets to Kevin's estate or prompt the distribution of assets belonging to the estate, so long as the court refrains from "reallocat[ing] [those] assets among contending claimants." *Cf. Gustafson*, 546 F.3d at 400. The Trustee's citations are the opening salvo of a two-part effort: first, to identify collectable assets (those belonging to the judgment debtor, Kevin's estate); and second, to collect those assets. The court has jurisdiction over this first step. The identification of assets properly within Kevin's estate would do no more than add any previously unidentified sums available for distribution to the estate's creditors. The court likely does not have jurisdiction over the second step in the process, however, because that would require the court to determine which claimant is entitled to the estate property. Particularly, there may be other creditors of the estate, not to mention the beneficiaries of the will, and the court will not "divvy[] up," *cf. Jimenez*, 597 F.3d at 24, or "reallocate" estate assets among them, *cf. Gustafson*, 546 F.3d at 400.

This result is likely to satisfy neither side in this dispute. Susan and the Estate object to the court's exercise of jurisdiction over the discovery of the assets of Kevin's estate. They first contend that declaring whether assets belong to the Estate is an essential function of the probate court and can only be performed by that court. (Reply Mem. in Supp. of the Estate of Kevin F. Flynn's Mot. to Dismiss Suppl. Proceedings for Lack of Jurisdiction [hereinafter "Estate Reply Br."] [493], at 6 (citing 755 ILCS 5/16-1(a); 5/16-1(d)).) The movants also argue that the probate court's jurisdiction "extends to all property of the decedent, no matter where it may be

found or when," *In re Lashmett*, 369 Ill. App. 3d 1013, 1018, 874 N.E.2d 65, 69 (4th Dist. 2007), which means, as Susan and the Estate see things, that this court may not even exercise jurisdiction over the *discovery* of assets that might properly be part of an estate. But the fact that the probate court has a power does not by itself establish that this court's jurisdiction is limited. *Marshall*, 547 U.S. at 313–14 (federal jurisdiction cannot be impaired by state law). If the state probate court were the only venue that could decide whether assets belonged in an estate as the movants suggest, *Gustafson* would have come out the other way: the estate's action, filed in federal court, to bring the $50,000 into the estate would have been subject to the probate exception. *See* 546 F. 3d at 400.

Nor does the court interpret the jurisdiction discussed in *Lashmett* to mean that the probate court has exclusive jurisdiction over the *res* even before it is found. That result, too, would be inconsistent with *Gustafson*: the $50,000 that the personal representative of the estate sought to add to the estate would have been in the exclusive jurisdiction of the probate court. *See id.* As this court reads the case law, the fairest interpretation is that the probate court has exclusive jurisdiction over estate assets, but that exclusivity takes effect only when the assets are found to belong to Kevin's estate.

The movants cite one other district court decision addressing a similar issue, but it is not controlling and, in any event, is distinguishable. In *Fischer v. Hartford Life Insurance Co.*, an insurance company attempted to remove a citation proceeding from the state probate court to the federal court on the basis of diversity jurisdiction. 486 F. Supp. 2d 735, 737–38 (N.D. Ill. 2007). Granting the estate's motion for remand, the district court concluded that the probate exception applied because citations to discover assets in the probate court are "specialized probate-related proceedings that give rise to state courts' unique proficiency in handling probate disputes . . . ." *Id.* at 740. The citation to discover assets at issue in *Fischer* was incident to a pending state court probate proceeding, and the defendant's action amounted to removing one strand of the state court's administration of the estate from that court to federal court. In

contrast, the citations issued by the Trustee in this case are incident to the enforcement of a federal court judgment that now happens to be against an estate. In this posture, the state has no more expertise than this court in the task of discovering assets that may be otherwise subject to a federal judgment. This procedural difference is also apparent in the separate and independent basis for the *Fischer* decision: that the matter was unremovable as a supplementary proceeding to the administration of the estate. *Id.* at 740–41 (only independent suits removable under 28 U.S.C. § 1441(a)).

The movants also cite a very similar case, *In re Estate of Lewis*, where an insurance company that received a citation to discover assets from an estate attempted to remove the proceeding from the state probate court on the basis of federal question jurisdiction, evidently because the insurance was part of an employee benefits plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). 128 F. Supp. 2d 573, 573–74 (N.D. Ill. 2001). The court granted a motion for remand, observing that the probate exception barred the removal of the citation proceeding because it was "at the core of the [state] proceedings . . . to ascertain the assets of the minor's estate." *Id.* at 574–75. Thus, as in *Fischer,* one party in *Lewis* was attempting to remove a citation proceeding (or potentially the entire administration of the estate, *id.* at 573 n.1) from the state probate court where there was no pre-existing federal litigation. *Lewis'*s observation that a search for assets is "at the core" of the probate proceeding appears to be overbroad in light of the subsequent *Marshall* and *Gustafson* decisions.

Finally, the movants raise a number of policy considerations identified by the Seventh Circuit in *Storm v. Storm* to determine whether a case falls into the probate exception. 328 F.3d 941, 944 (7th Cir. 2003). In *Storm*, the plaintiff alleged a tortious interference claim against his uncle for persuading his grandmother, shortly before she died, to execute a new will and trust naming the uncle as the sole beneficiary of her estate. *Id.* at 942. The district court dismissed the case under the probate exception, and the Seventh Circuit affirmed. *Id.* at 942–43. The *Storm* court attempted to clarify the scope of matters "'ancillary' to [] core probate activities to

such a degree" that they fell within the exception. *Id.* at 943. To make that determination, the Court of Appeals instructed courts to consider whether federal jurisdiction in the particular case would undermine the various interests animating the probate exception: first, an interest in uniformity, "to ensure that the outcomes of probate disputes will be consistent by limiting their litigation to one court system, rather than providing disputants the choice between two;" second, the interest in judicial economy, implicated by the fact that the "process of determining and effectuating a decedent's testamentary wishes will generally begin in a state court;" third, deference to the state courts' relative expertise in probate matters; and finally, the interest in preventing "unnecessary interference with the state system of probate law." *Id.* at 944. The court, observing that the tortious interference claim was not a "'pure' probate matter," nevertheless found that it was ancillary to probate proceedings because it was essentially a will contest: "the terms of the final, allegedly invalid testamentary instruments would essentially be bypassed, while [plaintiff] would receive, as damages, the assets he would have otherwise been entitled to under what he says are [his grandmother's] actual will and trust." *Id.* at 945.

The Trustee argues that these factors are not relevant after *Marshall*, as they were an effort by the Seventh Circuit to define which actions fell into the hazy area of interference with a probate proceeding. *See id.* at 943–44. The Trustee points out that *Storm* was specifically cited in *Marshall* as an example of a lower court's erroneous reading of the probate exception to "block federal jurisdiction over a range of matters well beyond probate of a will or administration of a decedent's estate." *Marshall*, 547 U.S. at 311. Indeed, although the Seventh Circuit has continued, since *Marshall*, to cite the *Storm* factors, their importance appears to have diminished in the wake of *Marshall*'s more straightforward rule that the probate exception is intended to prohibit concurrent jurisdiction over a *res*.

*Jones v. Brennan*, decided a few months after *Marshall*, concerned a claim by an heir against several probate judges, the public guardian, and several lawyers, alleging that the defendants conspired to deprive her of the property of her father's estate. 465 F.3d 304, 305

(7th Cir. 2006). Vacating the district court's dismissal based on the *Rooker-Feldman* doctrine, the court addressed the applicability of the probate exception. *Id.* at 305–06. The court mentioned only that "state courts are assumed to have developed a proficiency in these matters, to have procedures tailored to them, and to work closely with and even employ specialized staff not found in federal courts." *Id.* at 307. The court did not further consider any policy factors in holding that, to the extent the plaintiff's claim concerned "the maladministration of her father's estate," the probate exception clearly barred jurisdiction because the claim was "tantamount to asking the federal district court to take over the administration of the estate." *Id.* The plaintiff also alleged a breach of fiduciary duty, however: that the court's agents acted outside the scope of their agency in administering her estate. *Id.* at 307–08. The federal court had jurisdiction over that claim, the Seventh Circuit observed, because the claim did not require the court to administer the estate but instead would simply impose tort liability on individual actors. *Id.* at 308. The court remanded for further proceedings to determine the scope of the plaintiff's claims. *Id.* at 308–09.

*Struck v. Cook County Public Guardian*, decided a year later, examines the domestic-relations exception to diversity jurisdiction, the scope of which is "materially identical" to the probate exception and was similarly clarified by *Marshall.* 508 F.3d 858, 859–60 (7th Cir. 2007). Relying on the domestic-relations exception, the district court dismissed a plaintiff's claim that a state court-appointed guardian was abusing his mother. *Id.* at 859. Affirming the dismissal, the court acknowledged the "proficiency in core probate and domestic-relations matters" enjoyed by state courts, but decided the scope of federal jurisdiction solely on the basis that the *res* in question—the plaintiff's mother—was in the control of the state court and therefore beyond the reach of the federal court under *Marshall*'s holding. *Id.* at 860. And the court distinguished the *Jones* opinion on that basis: "[In *Jones*,] the plaintiff was not seeking to inject the federal court into the administration of the estate and wrest a *res* from the control of another court. . . ." *Id.*

11

Most recently, in *Sykes v. Cook County Circuit Court Probate Division*, the Seventh Circuit affirmed a district court's dismissal, under the *Rooker-Feldman* doctrine, of a claim that a state probate court violated the plaintiff's rights under the Americans with Disabilities Act (ADA) when it barred her from entering the courtroom with her service dog. 837 F.3d 736, 738–39 (7th Cir. 2016). The court considered the probate exception in the opinion, and explicitly cited the *Storm* factors: "In determining if the probate exception applies to an issue that is ancillary to a core probate matter, we look to the policies animating the exception, including consistency of legal decisions within a state court system, judicial economy, and the relative expertise of state judges as specialists in probate issues." *Id.* at 741. The Court of Appeals held that the probate exception did not bar the claim because the probate court's decision to prohibit the dog obviously had "nothing to do with probate law." *Id.* It went on to consider the policy factors, observing that the probate court had no greater expertise in determining the plaintiff's rights under the ADA, and a ruling from a federal court on the plaintiff's right to bring a dog into a courtroom would have no effect on probate or domestic relations law in the state. *Id.* Thus, while *Sykes* made reference to the *Storm* factors, the outcome of *Sykes* is fully consistent with *Marshall*'s holding that the applicability of the probate exception ultimately depends on whether federal jurisdiction would interfere with a state court's jurisdiction over a *res* arising from the state's administration of the estate.

The policy considerations in *Storm* remain significant, but they do not supersede the rule in *Marshall,* and do not require application of the probate exception in a situation where the probate court does not have jurisdiction over the *res*. *See Gustafson*, 546 F.3d at 400. Furthermore, whatever the factors' viability, they do not clearly dictate that this citation proceeding, to discover assets belonging to a federal judgment debtor, must be conducted in the probate court. The dispute is not in any meaningful sense—other than the fact that the judgment debtor is deceased—a "probate dispute." *See Storm*, 328 F.3d at 944. To the extent that consistency of decisions is one of the relevant factors, the court notes that the goal of

establishing consistency is not served by a rule requiring that a federal citation proceeding must take place in probate court where the debtor has died, but remains in this court so long as the debtor is alive. The movants may well be correct that the probate court has greater expertise here, given that the ultimate adjudication of whether assets belong to Kevin's estate may depend on the interpretation of his will or the various trust instruments. As *Gustafson* explained, however, where the plaintiff's suit to recover funds for the estate was ultimately based on an interpretation of the decedent's will, the probate exception did not curtail jurisdiction. 546 F.3d at 400. The court concludes that policy considerations do not favor application of the probate exception in this context.

## II.     Movants' Substantive Objections Are Not Persuasive

The movants raise three more arguments concerning the substantive merits of the Trustee's claim that a citation is properly issued. As explained below, none are persuasive.

### A.     Grounds for Issuance of Citation to Susan

First, Susan objects that the Trustee does not have sufficient grounds to examine her or the Appointive Trust in a search for the assets of Kevin's estate. (Susan's Br. 5–8.) She explains in detail why her personal property and the property of the Appointive Trust are not susceptible to collection to satisfy a judgment against Kevin's estate. *Id.* In denying the motion to quash, however, the court is not ordering the transfer of any assets. This ruling merely permits the Trustee to discover whether Susan might have assets that actually belong to Kevin's estate and determine whether the Appointive Trust contains only uncollectable assets, as Susan argues. (Trustee Br. 4–6.) Under Illinois law, the judgment creditor need only have a reasonable belief that third parties hold judgment debtor assets in order to issue a citation under 735 ILCS 5/2-1402. *GE Betz, Inc. v. Zee Co.*, 718 F.3d 615, 629 (7th Cir. 2013); *JPMorgan Chase Bank v. PT Indah Kiat Pulp & Paper*, No. 02 C 6240, 2012 WL 2254193, at *2 (N.D. Ill. Jun. 14, 2012) ("[T]o commence a citation proceeding against a third-party, the record must contain some evidence showing that the third party possessed assets of the judgment debtor.")

(internal quotation marks omitted).  The scope of discoverable information is broad, and a citation "need not specifically identify the assets or income sought."  *Regan v. Garfield Ridge Tr. & Sav. Bank*, 247 Ill. App. 3d 621, 623, 617 N.E.2d 818, 820 (2d Dist. 1993).

*JPMorgan Chase Bank*, raised in Susan's reply brief, examines the Illinois rule that the record must "contain some evidence showing that the third party possessed assets of the judgment debtor" before a citation proceeding may be commenced against that party.  2012 WL 2254193 at *2 (quoting *Pyshos v. Heart-Land Dev. Co.*, 258 Ill. App. 3d 618, 623, 630 N.E.2d 1054, 1057 (1st Dist. 1994)); *accord Schak v. Blom*, 334 Ill. App. 3d 129, 133, 777 N.E.2d 635, 639 (1st Dist. 2002); *Ericksen v. Rush Presbyterian St. Luke's Med. Ctr.*, 289 Ill. App. 3d 159, 166, 682 N.E.2d 79, 84 (1st Dist. 1997).  Notably, each of these three Illinois cases mentions the "some evidence" rule, but none actually applies it.  Instead, as *JPMorgan Chase Bank* itself points out, the Illinois decisions simply address the propriety of entering a turnover order against the third party.  2012 WL 2254193 at *2 ("Those cases establish only that the court cannot enter a judgment against a third-party who does not possess any assets of the judgment debtor.")  In *Pyshos*, for example, the court reversed a trial court's judgment against a corporation in a supplementary proceeding, holding that a plaintiff may not pierce the corporate veil in a supplementary proceeding under 5/2-1402.  258 Ill. App. 3d at 625, 630 N.E.2d at 1058.  The court noted, however, that "[a]n inquiry into whether a third party holds assets of the judgment debtor is proper in supplementary proceedings," and remanded for further proceedings against two individuals, based on the plaintiff's "allegations that [the individuals] converted corporate assets into personal assets," without further discussion of what evidence was required to proceed against them.  *Id.*  *Schak* states the "some evidence" rule, but proceeds directly to uphold the lower court's decision that a *turnover order* against a third party was inappropriate where the third party did not hold assets of the debtor.  334 Ill. App. 3d at 133–34; 777 N.E.2d at 639.  The court in *Ericksen* did the same, upholding the trial court's decision that a *judgment*

could not be entered against the citation respondent because the respondent did not hold any assets of the debtor.  289 Ill. App. 3d at 166–67, 682 N.E.2d at 84.

None of these cases is instructive on what evidence is required to initiate a citation proceeding because they address only what evidence is required to enter a judgment or order against the citation respondent.[4]  The district court in *JPMorgan Chase* determined, ultimately, that a citation was properly issued to a respondent that had "allegedly done business with an affiliate [corporation]" of the judgment debtor corporation and had entered into a settlement agreement with the debtor seven years before the citation was issued.  2012 WL 2254913 at *1–2.

Susan's reply brief cites another district court case that considered the level of evidence required to issue a citation: *YCB International Inc. v. UCF Trading Co.*, where a judgment creditor issued a citation to a judgment debtor's law firm, No. 09 C 7221, 2014 WL 117353 at *1 (N.D. Ill. Jan. 13, 2014), in an effort to determine whether the firm was involved in a "scheme[] to defraud creditors."  *Id.* at *3.  The firm had complied with the discovery request to the extent that it was relevant to discovering the judgment debtor's assets: it provided the retainer agreement, an accounting of payments received from or made to the debtor, and an affidavit that the firm had not made any other payments to people affiliated with the debtor.  *Id.* at *2.  The district court held that the firm was not required to respond to further discovery relevant only to the alleged scheme to defraud creditors, where the creditor had "not provided any evidence" to support the existence of the scheme, and the same allegations had been raised and dismissed in a state court proceeding.  *Id.* at *3.

---

[4]     Later cases actually read the "some evidence" rule as the standard for entry of a turnover order.  *See, e.g.*, *Workforce Sols. v. Urban Servs. of Am., Inc.*, 2012 IL App (1st) 111410, ¶¶ 39, 977 N.E.2d 267, 275–76; *In re Marriage of Takata & Hafley*, 383 Ill. App. 3d 782, 790, 890 N.E.2d 688, 694 (3d Dist. 2008).  This court declines to make a determination on the question of what showing is required before the court would compel turnover of assets in Susan's control.

*Regan* sheds some additional light on the evidence required to issue a citation. There, plaintiffs won a judgment against a man who took title to property belonging to his children in an effort to interfere with the plaintiffs' contract to purchase that property. 247 Ill. App. 3d at 622, 617 N.E.2d at 819. The plaintiffs then issued citations to discover assets in the hands of five of the children (four of whom had been involved in the scheme). *Id.* The trial court quashed the citations because the plaintiffs could not specifically identify assets in the children's possession that might be subject to the judgment, but the appellate court reversed. *Id.* at 623, 617 N.E.2d at 820. A party issuing a citation need not identify specific property, the court held, but need only "have a belief" that the third party possesses collectable assets. *Id.* Such a belief was justified in *Regan* "in light of the past financial interactions" between the children and the father. *Id.* at 624, 617 N.E.2d at 820.

In this case, similarly, the Trustee's belief that the citation respondents may have other collectable assets is substantiated, to the very limited extent necessary under 5/2-1402, by the fact that Kevin—in his life a wealthy man—possessed comparatively little at the time of his sudden death. He apparently owned no real estate and had virtually no cash in bank accounts subject to probate. (Inventory, Ex. F to Susan's Br. [483-8], at 10–12). These circumstances alone do not establish wrongdoing, but the Trustee's belief that there might be other assets is not unreasonable. Citations were properly issued to the parties most likely to have any outstanding assets from Kevin if they existed, including the Appointive Trust and Susan. Unlike *YCB International*, no potential avenue for recovery has been thoroughly ruled out by a binding judgment, and neither movant has responded to the citations to the extent necessary to establish whether they hold assets of the judgment debtor. 2014 WL 117353 at *2. Of course, any party subject to citation proceedings may make relevance objections if the examining party exceeds the bounds of questioning that might facilitate the location and collection of the debtor's assets. *See Shatkin Inv. Corp. v. Connelly*, 128 Ill. App. 3d 518, 523–24, 470 N.E.2d 1230, 1235 (2d Dist. 1984).

### B. Claim Preclusion Arising from Probate Case

Next, the Estate argues that the contents of the estate have already been decided by the probate court, and the Trustee's efforts to add to the estate "may be" barred under the doctrine of *res judicata.* (Estate Br. 9–10; Estate Reply Br. 13.) As Kevin's executor, Susan entered his will into probate, and the court approved a "First and Final Account" on July 1, 2014. (Order, July 1, 2014, Ex. B to Decl. of Susan Flynn [478-3].) The Estate is correct that the Illinois Probate Act codifies a rule of *res judicata*: "If the account is approved by the court upon the hearing, in the absence of fraud, accident or mistake, the account as approved is binding upon all persons to whom the notice was given." 755 ILCS 5/24-2. That said, the case cited by the Estate, *Hooks v. Bonner*, 187 Ill. App. 3d 944, 543 N.E.2d 953 (1st Dist. 1989), provides little guidance on how the rule might apply to this case. The plaintiff in *Hooks* struggled to state any claim and finally alleged, in a sixth amended complaint, "fraud or negligence in the administration, valuation and distribution of the estate . . . ." *Id.* at 947, 543 N.E.2d at 955. In the case before this court, the Trustee is not challenging the administration of the estate or seeking to overturn the distribution of the assets in the accounting; she seeks instead to determine whether additional assets, not addressed by the probate court, should be included in the estate.

This court notes that another provision of the Probate Act, 755 ILCS 5/24-9, permits a closed estate to be re-opened by "any interested person" to "permit the administration of a newly discovered asset or of an unsettled portion of the estate . . . ." If 5/24-2 barred claims that new assets should be included in the estate, every claim under 755 ILCS 5/24-9 from individuals that received notice of the final account under 5/24-2 would be barred. Given the broad language of 5/24-9, and the fact that neither provision references the other, 5/24-2 should not be interpreted to so limit 5/24-9. Furthermore, even if 755 ILCS 5/24-2 does bar certain claims to add property to an estate, it is not obvious that the provision operates to foreclose the discovery process. A party cannot assess whether the exceptions in 5/24-2 for fraud or mistake

apply until the party identifies an asset and is able to explore the reasons it may be missing from the estate.  *See* 755 ILCS 5/24-2; *cf. In re Winston's Estate*, 99 Ill. App. 3d 278, 287, 425 N.E.2d 973, 980–81 (1st Dist. 1981) (executor of estate could not use 755 ILCS 5/24-2 as bar where executor breached duty to include assets in estate).

The Estate further contends that if the citation proceeds, the Estate will be denied the jury trial, authorized by the probate code, on the issue of whether a particular asset properly belongs to Kevin's estate.  755 ILCS 5/16-3 ("[Q]uestions of title, claims of adverse title and the right of property shall be determined by a jury.").  This assessment may well be correct.  Federal law determines whether a state law claim requires a jury trial.  *Simler v. Conner*, 372 U.S. 221, 222 (1963) ("[T]he right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions.").  Under federal law, determining the true ownership of trust assets under 735 ILCS 5/2-1402 is an equitable claim not subject to a jury trial.  *Dexia Credit Local v. Rogan*, 629 F.3d 612, 625–26 (7th Cir. 2010).  The Estate has not explained why this principle should influence the question of the court's jurisdiction, and the Estate does not produce, nor can the court find, a case that holds that the absence of procedural rights has any bearing on jurisdiction.[5]

C.    **Overbreadth of Citation Notices**

Finally, the movants complain that the second page of several of the citation notices erroneously identifies all property of the recipient, rather than all property of the judgment debtor, as the subject of the citation.  (*E.g.*, Notice of Citation to Discover Assets to Susan F. Flynn, Not Individually, But As Executor of the Estate of Kevin F. Flynn [473-1], at 2 ("The Court has issued a citation against you . . . . The citation was issued based on a judgment against you . . . ."))  To the extent that the citations assert that the judgment is against the *recipient* of the citation or implies that the recipient is restrained from transferring any of *their own* property

_____

[5]    The question of whether a jury trial would be available was not fully briefed, and the court is not deciding the issue at this stage.  The court holds only that the absence of a jury trial right would not be a basis to grant the 12(b)(1) motion.

rather than property possibly owned by Kevin's estate, the court agrees that the citations are overbroad. No contempt proceedings will be entertained in the event that the recipients dispose of property in which Kevin's estate has no interest. *See Bank of Aspen v. Fox Cartage, Inc.*, 126 Ill. 2d 307, 321, 533 N.E.2d 1080, 1086 (1989) (third-party recipient of citation would not be subject to contempt for alienating property that did not belong to judgment debtor). If the parties have specific concerns about the effects of the citations on Susan's or another party's personal property, the court will hear motions regarding specific property.

### III.     The Court Will Not Adjudicate Claimants' Rights to Contested Assets

The Trustee, for her part, argues that the court not only has jurisdiction over the citations to discover the assets, but also to adjudicate title to them—that is, to turn them over to the Trustee in satisfaction of the judgment. She contends that the assets are not subject to probate proceedings because they are not held by the probate court, and may accordingly be distributed by this court outside probate. (Trustee Br. 10.) In support, the Trustee cites *Society of Lloyd's v. McMurray*, 274 F.3d 1133 (7th Cir. 2001). There, an insurance market regulator sought to enforce a foreign judgment against the defendant, who had died while the foreign action was pending against him. *Id.* at 1134. During his life, the decedent had created a revocable trust with himself as trustee and sole beneficiary, and which directed that his debts be paid from it after his death. *Id.* at 1134–35. The district court ordered assets in the trust turned over to satisfy the judgment. *Id.* at 1135. The estate argued on appeal that the trust was not liable for the debt, but the Seventh Circuit upheld the district court's turnover order, noting that the trust instrument expressly directed the trustee to pay the decedent's "legally enforceable debts." *Id.* at 1136.

Whether *Society of Lloyd's* is applicable will depend on what assets, if any, the Trustee identifies and ultimately contends are subject to the judgment. The case holds that if a trust instrument expressly directs that creditors be satisfied outside of probate, the district court may order the assets turned over, much as a trust allows a trust settlor to pass property outside

probate to his or her heirs.  *See Wells Fargo Bank v. Simpson*, 2015 IL App (1st) 142925, ¶ 27, 36 N.E.3d 266, 275 ("Persons often place their property into a revocable *inter vivos* trust to facilitate transfer on death and avoid probate.")  The parties contest whether that is true of any asset in this case, and it cannot be determined until an asset is identified.  *Society of Lloyd's* does not support the proposition that any assets that are not currently the subject of the probate court's jurisdiction may be used to satisfy the judgment, absent the settlor's express intent that they be used that way.

The court similarly does not find *Montgomery v. Michaels*, 54 Ill. 2d 532, 301 N.E.2d 465 (1973), instructive on the issue of whether assets found outside the probate court's jurisdiction are collectable by creditors outside of probate.  In *Montgomery*, a surviving spouse sought to recover a share of the assets in a savings account his wife had set up with her children as the beneficiaries in the event of her death, sometimes referred to in Illinois as a "*Totten* trust."  *Id.* at 533, 301 N.E.2d at 465–66.  The Illinois Supreme Court holds that such trusts may not defeat a spouse's statutory share in a decedent's estate.  *Id.* at 537–38, 301 N.E.2d at 467–68.  The opinion mentions that the case was filed as a citation proceeding in the Circuit Court of Lake County, *id.* at 533, 301 N.E.2d at 465, and the trial court distributed trust assets to the decedent's creditors and the beneficiaries, *id.* at 537–38, 301 N.E.2d at 468.  Even if this is an example of a non-probate court distributing estate assets (which is not at all clear from the opinion), it does not address the issue of the probate court's jurisdiction and provides no guidance on the issue before this court.

The court concludes only that it has jurisdiction to oversee a search for assets of the judgment debtor, which includes disputes about whether those assets are now in the hands of other persons or institutions.  Because of the probate exception's bar against allocating the assets of an estate, however, it appears unlikely that this court will be able to award the property to any particular claimant.  If the trust or Susan is found to have collectable property because property was transferred fraudulently to avoid the judgment as the Trustee implies (Trustee Br.

4–6), the appropriate remedy is for the court to reinstate the property as it was before the transfer was made, *Gayton v. Kovanda*, 368 Ill. App. 3d 363, 368, 857 N.E.2d 929, 933 (1st Dist. 2006); *Gilbert Bros. Inc. v. Gilbert*, 258 Ill. App. 3d 395, 400, 630 N.E.2d 189, 192–93 (4th Dist. 1994), which would place it in Kevin's estate. At least one other court in this district has recognized the possibility that a successful plaintiff in a fraudulent transfer action could proceed to probate court, "seek to reopen [the] probate case, have the property restored to the Estate and move to levy upon the property." *Reda v. Estate of Reda*, No. 10 C 1825, 2013 WL 5670918, at *3 (N.D. Ill. Oct. 15, 2013); *see also* 755 ILCS 5/24-9. Though the probate exception may well keep this court from dividing and distributing assets, *see Gustafson*, 546 F.3d at 400, the Trustee may proceed to the probate court, where Kevin's estate remains open. The court declines to comment on the wisdom or efficiency of pursuing the discovery phase in this forum where title will likely be determined in probate court. *See Marshall*, 547 U.S. at 298– 99 ("'It is most true that this Court will not take jurisdiction if it should not: but it is equally true, that it must take jurisdiction if it should . . . We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.'") (quoting *Cohens v. Virginia*, 6 Wheat. 264, 404 (1821)).

## CONCLUSION

The court's jurisdiction over the discovery of collectable assets from third parties, including disputes about whether assets properly belong to the decedent's estate due to fraudulent transfers or other cause, is not limited by the probate exception where the court is overseeing the execution of a federal judgment. Accordingly, the motions to dismiss these proceedings [477, 483] are denied, the stay of the citations [487] is dissolved, and the movants are ordered to comply with the citations except as ordered above.

ENTER:

Dated:          December 2, 2016
_____
REBECCA R. PALLMEYER
United States District Judge