UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| EMERALD CASINO, INC., | ) | Chapter 7 |
| | ) | 02 B 22977 |
| Plaintiff, Debtor | ) | Bankr. Adv. No. 08 A 00972 |
| | ) | |
| _____ | ) | |
| | ) | |
| FRANCES GECKER, not individually but | ) | |
| as Trustee for EMERALD CASINO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 11 C 4714 |
| | ) | |
| ESTATE OF KEVIN F. FLYNN, *et al.*, | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This dispute relates to a money judgment the court previously entered against the Estate of Kevin Flynn, a former CEO of the now-bankrupt Emerald Casino, Inc. Frances Gecker, the Chapter 7 bankruptcy trustee, has moved to compel turnover of certain assets in satisfaction of the judgment. Susan Flynn, Kevin Flynn's surviving spouse, objects to the motion, arguing that the "probate exception" to federal subject matter jurisdiction precludes this court from deciding whether the assets must be turned over to the Trustee. As explained below, the court concludes that the probate exception does not apply here, and therefore overrules Ms. Flynn's jurisdictional objection. Because the Trustee has not shown that the assets are in fact the property of Kevin Flynn's estate, however, the Trustee's motion is denied as well.

## BACKGROUND

The full history of this case is long and tortuous, and is available to the interested reader in the court's September 30, 2014 Memorandum Opinion and Order. *See In re Emerald Casino, Inc.*, 530 B.R. 44 (N.D. Ill. 2014). The court recounts only the basic outline and relevant details of that history here.

Kevin Flynn was an investor in, and later the CEO of, Emerald Casino, a company formed to operate a casino in Illinois. In 1999, Flynn and his associates successfully lobbied the Illinois legislature to amend the Illinois Riverboat Gambling Act, thereby making it possible for them to relocate their operating license from an unprofitable location on waterfront property near the Iowa border to the Village of Rosemont. The plan quickly ran into opposition from officials at the Illinois Gaming Board (IGB), who cited Emerald's managers for various regulatory violations and ultimately voted to revoke Emerald's license in January 2001. The following year, Emerald's creditors forced the company into a Chapter 7 bankruptcy proceeding. The action was converted to a Chapter 11 proceeding in September 2002, and back to a Chapter 7 proceeding in March 2008. *See generally In re Emerald Casino*, 530 B.R. 44 (N.D. Ill. 2014).

As early as 2003, Emerald's creditors considered the possibility of filing derivative claims against Flynn and his fellow corporate officers based on their actions leading to the revocation of Emerald's license. *Id.* at 164. Section 11.2 of the Riverboat Gambling Act required that twenty percent of Emerald's shareholders be female or minority investors, and in 2006 a majority of these investors sued Flynn and others in federal court, alleging RICO violations and state law claims for fraud, breach of fiduciary duty, estoppel, and conspiracy. *Id.* at 165. The district court dismissed the RICO claims as barred by 18 U.S.C. § 1964(c) (which states that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962") and declined to exercise supplemental jurisdiction over the state law claims. *See Payton v. Flynn*, No. 06-cv-465, 2006 WL 3087075, at *7-9 (N.D. Ill. Oct. 26, 2006) (Grady, J.). In October 2007, many of the same plaintiffs filed suit in the Circuit Court of Cook County, this time alleging that Flynn and his co-defendants breached an Amended Shareholders Agreement requiring compliance with IGB rules, as well as claims for breach of fiduciary duty, estoppel, and conspiracy. *In re Emerald Casino*, 530 B.R. at 165. The plaintiffs assigned these claims to the Chapter 7 bankruptcy trustee (hereafter "Trustee") in November 2008, and the Trustee removed the suit to the

Bankruptcy Court a month later. *Id.* at 166. A multi-year dispute over the proper forum for the Trustee's breach of contract and breach of fiduciary duty claims followed.

On January 9, 2009, while the Trustee's suit against Kevin Flynn was pending, LKQ Corporation[1] granted Flynn an "equity award" in the form of an option to purchase 60,000 shares in the company. (Letter from Victor M. Casini to Richard L. Dees,[2] Sept. 13, 2013 (hereafter "Casini Letter"), Ex. B to Trustee's Mot. to Compel Turnover (hereafter "Turnover Mot.") [583].) On June 3, 2009, Mr. Flynn signed a form titled "Beneficiary Designation" that named Susan K. Flynn as the primary beneficiary of his awards under LKQ's "1998 Equity Incentive Plan" in the event he died before "receiv[ing]" them. (Beneficiary Designation, Ex. G to Jurisdictional Obj. of Estate of Kevin Flynn (hereafter "Jurisdictional Obj.") [599].) LKQ subsequently granted Mr. Flynn two additional equity awards: 1,261 restricted share units (RSUs)[3] on May 12, 2011, and an additional 4,078 RSUs on May 12, 2013. (Casini Letter.) Kevin Flynn died on August 12, 2013. *In re Emerald Casino*, 223 F. Supp. 3d 740, 742 (N.D. Ill. 2016). His will was admitted to probate on August 26, 2013, and Judge James Riley of the Circuit Court of Cook County appointed Ms. Flynn as Executor of the estate. (Declaration of Susan Flynn (hereafter "Flynn Decl."), at ¶ 4, Ex. A to Jurisdictional Obj.) The LKQ stock options and RSUs did not appear on the inventory of Kevin's estate that Susan submitted to the probate court on June 14, 2014. (Inventory, Ex. A to Flynn Decl.) These items do appear, however, on a 2013 federal tax return for the estate, where they are listed as "[p]ayable on

---

[1] The parties have not provided any additional information about LKQ Corporation or Flynn's relationship to the company.

[2] Casini is identified in this letter as LKQ's Senior Vice President and General Counsel. Dees is identified only by his affiliation with the law firm McDermott Will & Emery. Without more information, the court presumes Mr. Dees served as counsel to Mr. Flynn's estate or to Ms. Flynn.

[3] Per the terms of two Restricted Stock Unit Agreements provided by Susan Flynn and the Estate of Kevin Flynn, these RSUs were LKQ shares subject to certain terms and conditions, including limitations on the owner's voting rights, entitlement to dividends, and right to assign or otherwise transfer "except by will or the laws of descent and distribution." (Restricted Stock Unit Agreement, Ex. E to Jurisdictional Obj.; Restricted Stock Unit Agreement, Ex. F to Jurisdictional Obj.)

death to Susan F. Flynn, the decedent's surviving spouse." (United States Estate (and Generation-Skipping Transfer) Tax Return (Hereafter "Tax Return"), Ex. A to Turnover Mot.)[4]

Following Kevin Flynn's death, the Trustee substituted his estate as a defendant in the litigation before this court.[5] *In re Emerald Casino*, 223 F. Supp. 3d at 742. In September 2014, the court dismissed the Trustee's fiduciary duty claims as barred by the statute of limitations, but found Flynn and several others severally liable for breach of contract damages totaling $272,000,000.00. *In re Emerald Casino*, 530 B.R. at 237-38. On January 12, 2016, the court entered a judgment for the Trustee against Flynn's estate in the amount of $45,333,333.33. (Judgment Order of Jan. 16, 2016 [401].) Both the Trustee and the defendants appealed that judgment, but the Seventh Circuit largely affirmed it. Because the Court of Appeals concluded that the "concurrent breach" doctrine applies, however, each defendant is now liable for the full amount of the judgment. *See In re: Emerald Casino, Inc.*, 867 F.3d 743 (7th Cir. 2017). Thus, the Estate of Kevin Flynn faces a judgment of $219,666,666.66. (Judgment Order of Oct. 17, 2017 [635].)

Kevin Flynn's estate turned out to be judgment proof—at least according to the Inventory and the First and Final Account that Susan Flynn filed with the probate court in June 2014. (*See* Inventory, Ex. A to Flynn Decl.; First and Final Account, Ex. B to Flynn Decl.) The Trustee suspects that certain of Mr. Flynn's assets might be located elsewhere, and has issued citations to discover assets to numerous individuals and institutions—including to Susan Flynn in both her individual capacity and as trustee of a trust. *In re Emerald Casino*, 223 F. Supp. 3d at 744. One of the documents produced in response to these citations was the 2013 tax return for

---

[4] Ms. Flynn has not explained why the stock options and RSUs appear on the tax return but not on the inventory of the estate. Nor does the Trustee suggest that this is significant. As explained further below, the Trustee contends that that the "payable on death" language in the tax return "is consistent with an attempt to register a security in beneficiary form, under Illinois's Uniform TOD [Transfer on Death] Security Registration Act." (Turnover Mot. 4.)

[5] This court withdrew the reference from the Bankruptcy Court in January 2012 and heard evidence at a bench trial that lasted from December 2012 to March 2013. *In re Emerald Casino*, 223 F. Supp. 3d at 171.

Flynn's estate, which listed the LKQ stock options and RSUs as "[p]ayable on death to Susan F. Flynn, the decedent's surviving spouse," and valued them at approximately $1.6 million. (Tax Return 10-11.) Another document produced in response to the citations was a letter from Victor M. Casini, Senior Vice President and General Counsel of LKQ Corporation, identifying the stock options and RSUs as "equity awards held by Kevin Flynn at the date of his death." (Casini Letter.)

On August 11, 2017, the Trustee filed a motion to compel Susan Flynn to turn over the LKQ stock options and RSUs or their cash equivalent. (Turnover Mot. 3.)[6] Approximately three weeks later, on September 1, 2017, Susan Flynn filed three petitions in the Circuit Court of Cook County, each of which asked for the Estate's attorney fees and costs to be paid, in part, from those same stock options and RSUs. (Pets. for Atty's Fees and Costs, Exs. I, J, K to Jurisdictional Obj.) On September 17, the Circuit Court directed Ms. Flynn to file an itemization of the fees and scheduled a hearing on the matter for the following month. (Order of Sept. 14, 2017, Ex. B to Trustee's Reply in Supp. of Turnover Mot [601].) The Trustee moved to stay the proceedings, and the Circuit Court re-set the hearing date for January 30, 2018. (Order of Nov. 29, 2017, Ex. E to Resp. to Status Report.) The Trustee's motion to compel turnover of the LKQ stock options and RSUs remains pending before this court.

## DISCUSSION

### I. Subject matter jurisdiction

Ms. Flynn contends that this court lacks subject matter jurisdiction based on the probate exception to federal jurisdiction. That exception is rooted in the Judiciary Act of 1789, which sets limits on the equity jurisdiction it confers on the federal courts. *See Marshall v. Marshall*, 547 U.S. 293, 308 (2006). The Act "reserves to state probate courts the probate or annulment

---

[6] The Trustee originally identified several additional items of property that she contended were available to satisfy the judgment, including certain jewelry, a 2013 Audi Q5, cash, and common stock, collectively valued at $324,820.53. She has since withdrawn her request for the turnover of those items, recognizing that they were included in the Inventory submitted to the probate court. (Trustee's Reply in Supp. of Mot. to Compel [601], at 2 n.1.)

of a will and the administration of a decedent's estate," and "precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Id.* at 311-12. It does not, however, "bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Id.* at 312. As one recent case explains, "the rationale for the rule is that in situations where a state court controls the subject of a custody battle or the property in a decedent's estate, another court should not 'be permitted to elbow its way into such a fight,' particularly because state courts are assumed to have developed a core proficiency in probate and domestic relations matters." *Sykes v. Cook Co. Circuit Court Probate Division*, 837 F.3d 736, 741 (7th Cir. 2016) (citation omitted). Because "the exception does not bar federal courts from exercising otherwise proper jurisdiction," however, the Seventh Circuit has advised that it "should be narrowly construed." *Id.*

This court has already addressed the probate exception's application in this case. *See In re Emerald Casino, Inc.*, 223 F. Supp. 3d at 745-51. As explained there, "claims that would *add* assets to an estate, but do not *reallocate* those assets among claimants or creditors, do not disturb a state probate court's possession of property." *Id.* at 746 (citing cases). The court therefore "has jurisdiction to oversee a search for the assets of [Mr. Flynn], which includes disputes about whether those assets are now in the hands of other persons or institutions." *Id.* at 755. The court does not, however, have jurisdiction "to distribute any assets found to be part of Kevin Flynn's estate." *Id.* at 742.

The Trustee argues that the LKQ stock options and RSUs "w[ere] never part of Kevin Flynn's probate estate" to begin with. (Trustee's Reply in Supp. of Mot. to Compel [601], at 2.) Therefore, she suggests, the probate exception does not prevent the court from ordering those assets turned over in satisfaction of the judgment. (*Id.*) According to the Trustee, these assets are not part of the estate because the "payable on death" language used to describe the LKQ stock on the 2013 Tax Return "is consistent with an attempt to register a security in beneficiary form" pursuant to the Illinois Uniform Transfer on Death (TOD) Security Registration Act.

6

(Turnover Mot. 4.) That statute provides, in relevant part, that a security registered in beneficiary form "passes to the beneficiary or beneficiaries who survive all owners," 815 ILCS 10/7, and that the resulting transfer of ownership is non-testamentary in nature. *Id.* at 10/9(a).

Ms. Flynn agrees that she became the owner of these assets at Kevin Flynn's death. (Jurisdictional Obj. 6.) Nevertheless, she contends, the probate exception prevents this court from deciding whether these assets are available to satisfy the judgment, because doing so "would operate to deprive the probate court of its jurisdiction to allocate the Estate's administrative expenses to that non-probate property." (*Id.* at 6.)

In support of this argument, Ms. Flynn cites two cases in which courts held that Illinois law permits the "equitable apportionment" of certain estate liabilities between probate and non-probate assets alike. *See Roe v. Farrell's Estate*, 69 Ill. 2d 525, 372 N.E. 2d 662 (1978) (upholding apportionment of estate taxes and administrative expenses, where tax liabilities exceeded probate estate's value and administrative expenses were incurred for services that "directly" benefited holders of non-probate assets); *Fender's Estate v. Fender*, 96 Ill. App. 3d 1029, 1032, 422 N.E.2d 107, 111 (1981) ("[A]pportionment is now the rule in Illinois, absent a clearly manifested contrary intent in the will."). Neither of these cases directly supports Ms. Flynn's position on the jurisdictional issue, as the fact that a probate court *may* exercise custody over the non-probate assets of an estate does not place such assets forever beyond the reach of the federal courts. The probate exception only bars federal courts from "interfering with" the probate process; thus it prevents them from "endeavoring to dispose of property that is *in the custody* of a state probate court." *Marshall*, 547 U.S. at 311-12 (emphasis added); *compare Lee Graham Shopping Ctr., LLC v. Estate of Kirsch*, 777 F.3d 678, 681 (4th Cir. 2015) (probate exception not applicable, even though court's disposition "may affect future distributions" by a probate court). Ms. Flynn has not presented any evidence that the LKQ stock options and RSUs are, or ever were, "in the custody" of the probate court. Rather, those assets passed to

Ms. Flynn outside of probate and never appeared on the inventory of the estate she submitted to the circuit court.

Ms. Flynn also finds support for her position in *Duffy v. Duffy*, No. 05C3217, 2006 WL 1443895 (N.D. Ill. May 19, 2006) (Kendall, J.). In that case, the executor of a will filed a complaint against the decedent's surviving spouse in the Circuit Court of Will County, Illinois, seeking a declaratory judgment that he was entitled to reimbursement from the estate's non-probate assets for personal funds he had used to pay the estate's taxes. More than a year later, the surviving spouse removed the case to federal court and filed a third party complaint against the executor and UBS Financial Services, seeking declaratory and injunctive relief pertaining to her rights to funds held in the decedent's retirement accounts. The district court held that it lacked jurisdiction to adjudicate the executor's request for reimbursement, because the questions it raised would "require an interpretation of the will and are intertwined with the administration of the estate." *Id.* at *2. The court also noted that Illinois law grants probate courts "jurisdiction over a decedent's probate and non-probate assets alike in apportioning expenses for the administration of the estate and the payment of taxes." *Id.* at *3.

Regardless of whether *Duffy* was rightly decided, it is distinguishable from the case now before the court. *Duffy* involved the removal of a state probate proceeding to federal court. The state probate court was already exercising *in rem* jurisdiction over the decedent's estate when the federal action was initiated, and the questions raised in the dispute would have required the federal court to interpret the decedent's will. Here, by contrast, there is no need for this court to interpret Kevin Flynn's will to resolve the question of whether the LKQ stock options and RSUs are available to satisfy the Trustee's judgment. The probate court, moreover, has deferred consideration of whether to take custody of the LKQ stock options and RSUs. Even if it hadn't, the probate proceeding was opened long after this action was filed in federal court, and the Trustee filed her turnover motion nearly a month before Susan Flynn petitioned the probate court to take custody over those assets for the purpose of apportioning her administrative

8

expenses and attorney fees. These differences in the procedural history of the cases are critical, as "the probate exception does not divest the federal courts of subject matter jurisdiction unless a probate court is already exercising *in rem* jurisdiction over the property *at the time that the plaintiff files her case in federal court*." *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 804 (6th Cir. 2015) (emphasis added); *cf. Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) (diversity jurisdiction determined based on parties' citizenship at time of filing).[7]

Because the LKQ stock options and RSUs the Trustee seeks are not, and never have been, in the custody of the probate court, the probate exception does not deprive this court of subject matter jurisdiction.

## II. Turnover motion

In post-judgment collection proceedings, district courts generally must "follow the law of supplementary proceedings of the state in which they sit." *Laborers' Pension Fund v. Pavement Maintenance, Inc.*, 542 F.3d 189, 191 (7th Cir. 2008); FED. R. CIV. P. 69(a). The Illinois supplementary proceedings statute states that a court may order a judgment debtor to turn over non-exempt assets or income "to which his or her title or right of possession is not substantially disputed," provided those assets are "in his or her possession or control." 735 ILCS 5/2-1402(c)(1). As this court previously explained, "the court may also order a third party to turn over assets to the creditor if those assets do, in fact, belong to the judgment debtor." *In re*

---

[7] The court recognizes that certain language from its previous decision in this case might suggest a somewhat broader understanding of the probate exception than the one outlined here. "Because of the probate exception's bar against allocating the assets of an estate," this court wrote, "it appears unlikely that this court will be able to award the property to any particular claimant. If the trust or Susan is found to have collectable property because property was transferred fraudulently to avoid the judgment . . . the appropriate remedy is for the court to reinstate the property as it was before the transfer was made, which would place it in Kevin's estate." *In re Emerald Casino*, 223 F. Supp. 3d at 755 (citing *Gayton v. Kovanda*, 368 Ill. App. 3d 363, 857 N.E.2d 929, 933 (2006); *Gilbert Bros. Inc. v. Gilbert*, 258 Ill. App. 3d 395, 630 N.E.2d 189, 192–93 (1994)). Upon further consideration of the relevant caselaw, this court concludes that reinstating the property to Kevin Flynn's estate would not necessarily place it outside of this court's jurisdiction. Because this court had subject matter jurisdiction at the time the Trustee filed her motion, the property's status as a part of Kevin Flynn's estate may not preclude this court from ordering it (or some portion of it) turned over in satisfaction of the Trustee's judgment.

9

*Emerald Casino, Inc.*, 223 F. Supp. 3d at 745 (citing *Dexia Credit Local v. Rogan*, 629 F.3d 612, 624 (7th Cir. 2010)).

The Trustee here argues that the supplemental proceedings statute and the Uniform TOD Security Registration Act together permit the court to order Ms. Flynn to turn over the LKQ stock options and RSUs. "There is no substantial dispute that Kevin Flynn held 'title or right of possession'" to these assets at the time of his death, the Trustee's argument begins. (Turnover Mot. 4.) "Clearly," the Trustee continues, "judgment creditors have the right to satisfy their judgments with the debtor's stock options and restricted stock units." (Trustee's Reply 9 (citing *Bear, Stearns & Co. v. Sitlington*, 20 F. App'x 551, 553 (7th Cir. 2001)).) Susan Flynn is now in possession of the stock options and RSUs by virtue of a non-testamentary transfer under the Illinois Uniform TOD Security Registration Act. (Turnover Mot. 4.) That statute states that the Act "does not limit or expand the rights of creditors of security owners against beneficiaries and other trustees under other laws of this State." 815 ILCS 10/9(b). Therefore, the Trustee reasons, "such registration does not limit the right of the Trustee, as judgment creditor, to reach the LKQ stock in satisfaction of her Judgment." (Turnover Mot. at 5.)

The court is not persuaded by this reasoning. The Trustee has not accounted for the fact that neither Kevin Flynn nor his estate owned the options and restricted share units at the time of the judgment. Those assets passed to Susan Flynn immediately upon Kevin's death in August 2013—more than a year before the court issued its decision regarding liability, and nearly two and a half years before the court entered the judgment the Trustee now seeks to enforce. (*See* Judgment Order of Jan. 16, 2016 [401].) The fact that the Illinois Uniform TOD Security Registration Act does not "limit . . . the rights of creditors of security owners against beneficiaries" is irrelevant where, as here, the creditor (that is, the Trustee) has not shown that she has any claim against the beneficiary of the registration (i.e., Susan Flynn) in the first place. 815 ILCS 10/9(b).

The Trustee attempts to escape this result by pointing out that the death of a judgment debtor while proceedings are pending does not *always* prevent a court from ordering the turnover of assets that the judgment debtor transferred to a third party before judgment was entered against him. (*See* Trustee's Resp. to Sur-Reply [621], at 2.) True enough. Where, for example, a judgment debtor transfers assets to another "with the actual intent to hinder, delay, or defraud any creditor of the debtor," Illinois law permits the creditor to collect those assets to satisfy the judgment. 740 ILCS 160/5(a)(1); 19A ILL. L. & PRAC. *Fraudulent Conveyances* § 21 (database updated November 2017) ("A conveyance made in apprehension of future litigation or for the purpose of avoiding collection of damages is fraudulent as to creditors."). But the Trustee here has not alleged that Mr. Flynn's registration of the LKQ stock in beneficiary form constitutes such a fraudulent transfer. Nor has she offered any other rationale for her position that assets owned by someone other than the debtor at the time of the judgment should be made available to the Trustee. The fact that such assets might *sometimes* be available to satisfy a judgment does not mean that they are *always* so.

The case cited by the Trustee—*Society of Lloyd's v. Estate of McMurray*, 274 F.3d 1133 (7th Cir. 2001)—only reinforces this conclusion. In that case, McMurray died shortly before a money judgment was entered against him. The judgment creditor sought to satisfy the judgment with assets in a revocable trust McMurray had created (naming himself as trustee and sole beneficiary) before the judgment debtor initiated legal proceedings against him. *Id.* at 1134. On appeal, the Seventh Circuit affirmed the district court's order that assets in the trust be turned over to satisfy the judgment, noting that the trust instrument in question included "crystal clear language, that at McMurray's death 'the trustee shall pay from the residuary trust estate without reimbursement my legally enforceable debts.'" *Id.* at 1136. This language provided the basis for ordering the turnover of assets that otherwise would have been beyond the judgment creditor's reach.

The Trustee urges a broader reading of *Society of Lloyd's*, whereby virtually any assets that Mr. Flynn owned at the time of his death must become available to satisfy the Trustee's judgment. (*See* Trustee's Resp. to Sur-Reply 2.) She quotes language from the decision that appears—when taken out of context—to give this court nearly unlimited authority to enforce its judgments by compelling the turnover of assets belonging to parties other than the judgment debtor. *See, e.g.*, *Society of Lloyds*, 274 F.3d at 1136 ("The Illinois [supplemental proceedings] statute vests courts with broad powers not only to order discovery, but also to compel application of discovered assets to satisfy a judgment."). But such a broad reading is implausible when the decision is read as a whole. As noted above, *Society of Lloyd's* emphasizes the "unmistakably clear language" of the trust instrument in question as a basis for finding that the trust assets were available to the judgment creditor. *Id*. It does not establish a broader rule that, where a money judgment is entered against the estate of a decedent who died during the pendency of proceedings against him, a judgment creditor may satisfy the judgment with any assets that were owned by the decedent at the time of his death. This court's interpretation of *Society of Lloyd's* should come as no surprise to the Trustee, as earlier in these very proceedings the court advised the parties that "[w]hether *Society of Lloyd's* is applicable will depend on what assets, if any, the Trustee identifies and ultimately contends are subject to the judgment . . . . *Society of Lloyd's* does not support the proposition that that any assets that are not the subject of the probate court's jurisdiction may be used to satisfy the judgment, absent the settlor's express intent that they be used that way." *In re Emerald Casino, Inc.*, 223 F. Supp. 3d at 754-55.

The Trustee in this case has not presented any evidence to suggest that Kevin Flynn similarly intended for the benefits of his Equity Incentive Plan to be used to pay his debts after his death. Nor has she alleged that the registration of the LKQ securities in beneficiary form was a fraudulent attempt to avoid paying future judgment creditors. She has not, in fact, offered

12

any reason why assets owned by someone other than the judgment debtor should be made available to satisfy her judgment. As a result, her turnover motion must be denied.

## **CONCLUSION**

The court concludes that it does have subject matter jurisdiction over the Trustee's turnover motion. That motion [583] is denied because the assets the Trustee seeks were not part of Kevin Flynn's estate at the time of the judgment, and the Trustee has not alleged any basis for invalidating the pre-judgment transfer of those assets to Ms. Flynn.

ENTER:

Dated: January 24, 2018

_____
REBECCA R. PALLMEYER
United States District Judge